Good morning, everyone. We have six cases on today's oral argument calendar, and we'll begin with appeals numbers 23-2394 and 23-2541, the United States v. Derrick Claiborne and Ms. Sostek. Good morning. Nice to see you, whenever you're ready. Good morning. May it please the court, my name is Erin Sostek. I'm here on behalf of defendant appellant Derrick Claiborne. The instant case is a perfect example of a situation where the mere presence of firearms at the scene of a crime is insufficient to establish that the firearm was possessed in furtherance of drug trafficking. In this case, the only contested issues on appeal and in the lower trial court were whether or not the firearms that were found in Mr. Claiborne's apartment were related to the actual trafficking of drugs. Ms. Sostek, before you go too far, can I clarify something, please? Your client has filed a notice of appeal in two cases. It seems to me that there's nothing at issue in the case that was before Judge Wood, the 18CR 797 case, that it's only in the other case. That's correct. OK. Yeah, the only issues that we raised on appeal were related to the second case. OK, thank you. With regards to the first case, Mr. Claiborne actually entered a guilty plea. And for two counts in the second case, Mr. Claiborne also entered a guilty plea, admitting that he possessed the weapons and that he possessed the drugs with the intent to distribute them. However, the government did not meet its burden to prove that the weapons that were found in Mr. Claiborne's apartment at the time the arrest warrant was executed were actually directly related to a drug trafficking crime. So I think you have, just in the interest of time, I think you have two facts that you've got to grapple with on his behalf. First, at the time that the law enforcement team entered the apartment, he was literally in the process of preparing for packaging piles of heroin, eight or 10 piles of heroin, correct? Correct. OK. The other difficulty that he presents for you is the guns, plural, were found in a backpack with a whole bunch of cash. Correct, yes. In the master bedroom closet. And so seeing a connection between the guns and the drugs in light of those two facts, among others, is not that difficult, at least from the standpoint of the standard of review under which we're operating. So the facts that you were just drawing attention to, the fact that he was sitting there with the drugs in front of him and with the intent to package them or whatever, that goes to the distribution, the intent to distribute that he pled guilty to already. Here, the problem is that the actual guns that were found in the master bedroom closet, they were up on a shelf. They were in a bag that I believe was closed. Did the bag also have $30,000 in cash in it? It did, yes. That's kind of weird, isn't it? Well, it actually also had some medication in there as well. And it looked like it was. Why does that matter if there's $31,000 in cash? Maybe he's selling medication. In an apartment where he is clearly distributing heroin or putting heroin together, why does it matter that this backpack might have other things besides drug proceeds in it? So there were prescription drugs in there. One of them was an inhaler. The drugs appeared to be for personal use, the medication in the bag. And so what was argued in the trial court was that this could easily be a go-bag for someone who might feel they need to leave their apartment quickly. They have cash, weapons. It's possible. I mean, look, you're doing the best you can on a hard set of facts. It's possible. But you've got to grapple with the standard of review. And that is that no rational juror could have reached a conclusion on this evidence other than the one that you're urging. That's tough. It is absolutely a very tough standard on review. However, I will just go back to the mere presence argument. So far, all we've talked about was the fact that the guns were actually there and there was drug distribution going on. There needs to be something more than just the fact that the drug distribution and the guns were both in the apartment at the same time. And what is often argued is that the guns are being used to protect the drug business and the drug dealing business, whereas here, the guns were totally on the opposite side of the apartment while Mr. Claiborne was allegedly packaging his drugs. So he did not have those guns handy. The case law doesn't require them to be in the same room. The case law requires them to be easily accessible. Correct. The apartment is not that big. And you could get to the master bedroom pretty quickly. It was on the other side of the apartment, like the complete other side of the apartment, in a closet inside the master bedroom, up on a shelf inside a bag that was zippered closed. With drug proceeds. Yes, with drug proceeds. Well, no, I'm not going to. There was actually no evidence. Give us a standard of review. $31,000 of cash. There was a lot of cash, but I will just note for the record that the government did not present any evidence that that money in particular was drug proceeds. There's over close to $100,000 in cash in the apartment in total. And the defendant was in the process of packaging heroin when they got there. Given the standard of review, that's a pretty steep hill to argue. It is a steep hill to argue. However, I will say that what the government has proved is that guns are usually used as protection. However, they did not prove that Mr. Claiborne's guns in particular because of how far they were away from him while he was packaging the drugs. They didn't show that there hadn't been any drug deals in the apartment whatsoever. So the government also did not show that Mr. Claiborne had in the past used these guns for protection in any way. What concerns me about your argument is you're close to arguing that direct evidence is needed. So one, a circumstance where the gun is in his waistband. Our laws never required that. Or two, that the defendant makes a post-arrest statement saying I possess the gun to protect my drug stash and my cash. And we've never required a post-arrest statement from a defendant either. I agree that it does not require direct evidence. However, I would say that looking at the factors that this court looks at, which is whether or not the weapon is easily accessible, the type of the weapon, whether it was stolen, the status of the possession, and whether it was loaded or not, those factors in this case show that all we have here is that the guns were in a separate room to where the drugs were. And yes, there was money, but there was never any evidence. Are you saying that the gun has to be used in connection with the actual distribution of the drugs as opposed to protecting the drug proceeds? No, but I'm saying that there needs to be some evidence that the guns were being used to protect the drug proceeds. And you don't think any reasonable juror could draw that inference based on the fact that the two loaded handguns in the same apartment were in a backpack with over $31,000? I think that this- That no reasonable juror could draw that inference? Well, I will note that this was a bench trial as well, and so we're actually reviewing the trial court- The standard of review is the same. And I would say that I don't think that it's reasonable to draw that for a juror to draw that inference in this case because this court requires there to be more than mere presence in the vicinity of the offense. And here, I believe that all we have is the mere presence. And I will just conclude there and save the rest of my time for rebuttal. Yeah, of course. Very well. We'll hear from the government. Good morning. Jared Jodder here on behalf of the United States. The district court correctly concluded that the evidence proved beyond a reasonable doubt that Derek Claiborne possessed a firearm in furtherance of a drug-trafficking crime. The defendant is here challenging the sufficiency of that evidence, but as this court has already observed, that the standard of review here is deferential, right? The defendant needs to establish carrying a heavy, as this court has described it, nearly insurmountable burden that no rational trier of fact, looking at the evidence, in a light most favourable to the government, would have found him guilty. And they just haven't proven that. They haven't met that high standard here, right? The evidence... Did Agent Karczewski here testify as an expert? He did. OK. And what he put forward was the government's theory of what these guns, the three loaded firearms in the apartment, the same apartment where he is in the process of packaging over a kilogram of fentanyl-laced heroin at five in the morning, right down the hall, with over $100,000 in cash, a bag with two loaded firearms containing over $30,000 in cash. Derek Claiborne was a felon. He was not allowed to have any guns, let alone three loaded firearms in his apartment. The court made the rational, reasonable inferences, applying common sense, considering the case law, the factors that this court has highlighted, and came to the conclusion that he was guilty. And the evidence supported that conclusion. Mr. Jodry, as we talk about this apartment, we're not talking about an apartment that runs the entire floor of the building. It's a very typical two-bedroom apartment. That's correct. And when I look at the floor plan, he was packaging the heroin in there, or cooking the heroin, whatever he was doing in the laundry room, right? That's correct. You walk into the apartment, the laundry room is off to the sides, where he was packaging all the heroin. He had the scales, he had the bags, he had the little baggies, and- The backpack's in the master bedroom closet. Right. Any doubt that the master bedroom belonged to him? Nope, was not contested. And the only two residents in the apartment, if memory serves, well, there was a child that was sleeping in the apartment, unfortunately, right? That's correct. And then he was there, but no other occupants, right? That's correct. His, I believe, fiance at the time was out in Las Vegas, but he agreed and stipulated to all the evidence establishing that that was, in fact, his apartment, that was his bedroom. Between the laundry room where he was packaging the heroin and the bedroom was just the living room area. This was just a two-bedroom apartment. So you walk through the living room, you walk into the master bedroom, there's a million apartments like this in Chicago. Correct. If there are no further questions, we ask that the court affirm the district court's verdict. Okay, very well, thank you. Thank you. So, Stockie, you had some time left on rebuttal. You're welcome to use it. So, recognizing that there is a high burden as far as the standard of review in this case, I will just note again that what we do need here is more than just the presence of these guns in the apartment. And yes, it was a small apartment, but Mr. Claiborne still had to go to the complete other end of the apartment into a closet and open a bag to get out these firearms if he wanted to use them as protection. And when the police went and executed the warrant, he was there in the middle of packaging guns. He made no effort, packaging drugs, sorry. He made no effort to reach for those guns or attempt to get those guns, even though the apartment had been breached. Additionally, I will also note that there just was no previous evidence that Mr. Claiborne had used that apartment for drug dealing at all. So, there's no evidence in the record that the guns had been used for protection in drug dealing. The only evidence is the fact that they were there in the bag with some money, a lot of money. And so, I would argue that this court does need to find that there is a link between the drug trafficking and the actual firearms that were found in the apartment, and not just the fact that most drug dealers tend to use firearms for protection. There needs to be a connection between Mr. Claiborne's drug dealing and these firearms, and I do not believe the government met its burden on that respect. Thank you. Okay, thanks to you, Ms. Hostock. I see here you accepted an appointment by the court to represent Mr. Claiborne, correct? Correct. We very much appreciate that, your service to him and to the court. Mr. Jodry, thanks to you. Nice to see Mr. Fullerton as well. We'll take the appeal under advisement, and we'll proceed to our second argument. Thank you.